## S07F0743. ALEJANDRO v. ALEJANDRO.
(651 SE2d 62)

HINES, Justice.

This appeal arises from a final judgment and decree of divorce.[1] For the reasons that follow, we affirm.

The parties were married in 1998, while both were in college. There were two children of the marriage, born in 1999 and 2000. In 2002, Karli Alejandro filed her complaint for divorce from Drew Alejandro. The trial court's final judgment and decree of divorce awarded the Alejandros joint legal custody of the children, with primary physical custody in Karli Alejandro, ordered Drew Alejandro to pay child support, and made an equitable division of the couple's property.

1. Several of Mr. Alejandro's complaints rely upon his contention that the trial court erred in failing to find as fact that the cause of the dissolution of the marriage was adultery on the part of Ms. Alejandro. The trial court's factual findings will be upheld if there is any evidence to support them. *Baker v. Baker*, 280 Ga. 299, 301 (627 SE2d 26) (2006). As Mr. Alejandro concedes, there is evidence of adultery on the part of each spouse. Further, there is evidence of physical harm to Ms. Alejandro at the hands of Mr. Alejandro, and that the dissolution of the marriage was caused by Mr. Alejandro's return to Ohio to work for his father. It was not error to determine, as the trial court did, "that any adultery committed by either party was not the cause of the dissolution of the marriage."

Accordingly, Mr. Alejandro's contention that he should have been awarded sole custody of the children under OCGA § 19-9-1 (a) (1)[2] on the theory that Ms. Alejandro is the "defaulting party" is meritless. The trial court properly decided the question of child custody based upon the best interests of the children. See *Patel v. Patel*, 276 Ga. 266, 267-268 (1) (577 SE2d 587) (2003). Similarly, there is no merit to Mr. Alejandro's contention that the court's order that he be responsible for a certain debt violates OCGA § 19-6-1 (b)'s stricture that alimony

---

[1] The amended final judgment and decree of divorce was issued on August 30, 2006. The original final judgment and decree of divorce was issued on May 24, 2004, following a bench trial December 29-30, 2003.

[2] As effective in this case, OCGA § 19-9-1 (a) (1) reads:
In all cases in which a divorce is granted, the party not in default shall be entitled to the custody of the minor children of the marriage. However, in all cases in which a divorce is granted, an application for divorce is pending, or a change in custody of a minor child is sought, the court, in the exercise of a sound discretion, may look into all the circumstances of the parties, including improvement of the health of a party seeking a change in custody provisions, and, after hearing both parties, may make a different disposition of the children, placing them, if necessary, in possession of guardians appointed by the judge of the probate court.

not be awarded to a party whose adultery caused a divorce;[3] even if, as he maintains, payment of this obligation is to be considered alimony, rather than an equitable division of property, the fact remains that adultery was not the cause of the dissolution of the marriage. Thus, Mr. Alejandro also fails in his contention that attorney fees were improperly awarded to Ms. Alejandro as part of alimony in violation of OCGA § 19-6-1 (b).

2. To the extent that Mr. Alejandro separately enumerates as error that the trial court erroneously concluded that the best interests of the children were served by placing their primary physical custody with Ms. Alejandro, no reversal is warranted. The court noted that it considered Mr. Alejandro to also be a suitable primary physical custodian, and when a trial court finds both parents to be fit custodians, and assigns primary physical custody to one, "this Court will not interfere with that decision unless the evidence shows the trial court clearly abused its discretion. [Cit.]" *Brock v. Brock*, 279 Ga. 119, 121 (3) (610 SE2d 29) (2005). There was evidence supporting the court's decision, and it will not be disturbed on appeal. Id.

3. In connection with his argument that the trial court should have found that the dissolution of the marriage was due to Ms. Alejandro's adultery, see Division 1, supra, Mr. Alejandro also contends that the court erred when making its equitable division of property in finding that he was responsible for Ms. Alejandro's student loans. To the extent that this assertion raises a separate cognizable argument, there was evidence from which the trial court could determine that Mr. Alejandro asked Ms. Alejandro's father for permission to marry her, and that before her father gave his blessing, he "asked Drew for just a couple of things" and elicited an agreement that Mr. Alejandro would pay Ms. Alejandro's student loans if she left college without graduating. The court's factual finding will not be disturbed. See *Langley v. Langley*, 279 Ga. 374, 377 (2) (613 SE2d 614) (2005).

4. At the time they purchased the marital home in November 1999, the couple received $10,000 as a gift from Ms. Alejandro's grandparents to pay credit card debt to enable them to qualify for a mortgage. Until he left Georgia to work in Ohio in May 2002, Mr. Alejandro was the primary provider of funds to pay the mortgage;

---

[3] OCGA § 19-6-1 (b) reads:

A party shall not be entitled to alimony if it is established by a preponderance of the evidence that the separation between the parties was caused by that party's adultery or desertion. In all cases in which alimony is sought, the court shall receive evidence of the factual cause of the separation even though one or both of the parties may also seek a divorce, regardless of the grounds upon which a divorce is sought or granted by the court.

after that, Ms. Alejandro made the payments. The trial court awarded all interest in the marital home to Ms. Alejandro. Mr. Alejandro repeats his contention that adultery on the part of Ms. Alejandro was the cause of the marriage's dissolution, and argues that the trial court should have considered this fact before apportioning marital property. See *Peters v. Peters*, 248 Ga. 490 (283 SE2d 454) (1981). However, again, the trial court found that "any adultery committed by either party was not the cause of the dissolution of the marriage." This recital shows that the court properly considered the parties' conduct. See *Waters v. Waters*, 280 Ga. 477, 479 (4) (629 SE2d 233) (2006).

Mr. Alejandro also urges that the trial court failed to consider his "contribution to the increase in the equity of the residence." But, the court found as fact that the couple held no equity position in the house, and Mr. Alejandro advances no argument or evidence to dispute the correctness of that finding.[4] The award of all interest in the house to Ms. Alejandro was not outside the trial court's broad discretion to divide marital property fairly. See *Mathis v. Mathis*, 281 Ga. 865, 866 (642 SE2d 832) (2007).

5. The couple also received $3,000 from Ms. Alejandro's grandparents in order to pay closing costs in connection with the purchase of the marital home. In the divorce decree, the trial court ordered that each party repay half of this amount. Mr. Alejandro contends that the $3,000 was not a loan subject to equitable division, but was, in fact, a gift. However, Ms. Alejandro testified that "we borrowed" the $3,000, and there was evidence from which the trial court could determine that the funds were provided not as a gift, but as a loan. Id.[5]

6. The trial court calculated Mr. Alejandro's child support obligations based on a gross income of $45,000 a year. He testified that his true annual gross income was between $25,000 and $28,000. However, he also testified that his annual income in 2000 and 2001 was between $40,000 and $45,000, that he moved to Ohio in 2002 to make more money, that for a thirteen-month period ending eight months before trial he had bank deposits of over $56,000, and that for the year following trial he anticipated an income from salary and commissions of $40,000. The trial court sat as finder of fact, and the determination of income frequently involves resolving conflicts in evidence. See

---

[4] The court ordered that Ms. Alejandro refinance the house within six months of the date of the divorce decree, or failing that, to sell the house and be solely responsible for any deficiency.

[5] Again, in connection with this argument, Mr. Alejandro contends that adultery on the part of Ms. Alejandro was the cause of the marriage dissolution, and argues that the trial court should have considered this fact before apportioning marital debt. See *Peters*, supra. However, as noted above, the trial court properly considered the parties' conduct. See *Waters*, supra.

*Franz v. Franz*, 268 Ga. 465, 465-466 (1) (490 SE2d 377) (1997). The evidence supported the court's findings as to Mr. Alejandro's gross annual income. Id.

7. Finally, Mr. Alejandro cites the trial court's inclusion in the divorce decree of a provision that Ms. Alejandro "shall be entitled to 50% of any and all retirements maintained by the Husband," and contends that including this provision is error because there was no evidence presented at trial of any retirement account being held by either party. However, on motion for new trial, he did not present any evidence that retirement funds actually exist upon which this provision could operate. Thus, even if the provision is unwarranted, Mr. Alejandro has failed to show any harm arising from its inclusion in the divorce decree, and thus has failed to show reversible error on this point. See *Madison v. State*, 281 Ga. 640, 642 (2) (b) (641 SE2d 789) (2007); *Bateman v. Bateman*, 224 Ga. 20, 21 (1) (159 SE2d 387) (1968).

*Judgment affirmed. All the Justices concur.*

DECIDED SEPTEMBER 24, 2007.

*Karlyn Skall*, for appellant.
*Alfred L. King, Jr.*, for appellee.