**FIRST DIVISION**
**BARNES, P. J.,**
**GOBEIL and PIPKIN, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules

**March 12, 2025**

# In the Court of Appeals of Georgia

A24A1384. CASTILLO v. LOPEZ.

BARNES, Presiding Judge.

We granted Antonio Robles Castillo's request for discretionary review of the denial of the his motion for new trial following the entry of the final judgment and divorce decree of Castillo and Jessica Cardenas Lopez. Castillo now appeals and challenges the award of alimony, the trial court's analysis used in the division of the marital property, and the award of attorney's fees to Lopez. For the reasons that follow, we affirm the court's judgment awarding alimony and its division of marital property, but vacate the award of attorney's fees, and remand the case for further proceedings consistent with this opinion.

Castillo and Lopez were married in 2001, and have three minor children and one adult child.[1] Lopez filed a complaint for divorce in November 2021, alleging that the marriage was irretrievably broken, and requesting, among other things, primary physical and joint legal custody of the children, child support, the equitable division of the couple's property, and temporary and permanent alimony. Castillo answered and also included a counterclaim for divorce on irretrievably broken grounds, and he further requested that he be awarded his equitable share of the couples assets, debts, and marital home, pre-marital and non-marital property that belonged to him, and the temporary and permanent joint legal custody of the children.

In the couple's January 2023 divorce decree, the trial court, inter alia, calculated Lopez's gross monthly income as $3,000 and Castillo's gross monthly income as $7,000. The court awarded the marital residence to Lopez and a home jointly owned by the couple in Mexico to Castillo, ordered Castillo to pay off the mortgage for the marital residence by November 2024, and awarded Lopez a portion of the equity in the Mexico property. The court also ordered Castillo to pay $2,000

---

[1] Prior to trial, the couple reached an agreement on parenting time, custody and visitation.

in monthly alimony until the mortgage on the marital residence is paid in full. Finally, the court awarded Lopez $15,000 in attorney fees.

1. Castillo first contends that the trial court's award of temporary alimony to Lopez was improper and excessive. In support of this contention, Castillo points to the contrast between his monthly gross income of $5,505 and the $5,629 total award to Lopez, which includes $2,000 in monthly temporary alimony, the monthly mortgage payment of $2334, and monthly child support of $1,295. The trial court ordered that the temporary alimony be paid "until such time as [Castillo] pays off the outstanding mortgage on the marital residence as provided for [in the divorce decree]." Relatedly, the trial court ordered that Castillo pay the monthly mortgage on the primary residence and "pay off the entirety of the mortgage balance no later than November 29, 2024." The divorce decree provided that alimony would terminate upon proof that the mortgage had been paid in its entirety.

Castillo argues that the temporary alimony award was improper in that it was not related to pending litigation, as the litigation had concluded, and also was not in contemplation of an appeal. See OCGA § 19-6-3 (a) (providing in relevant part that "[w]henever an action for divorce or for permanent alimony is pending, either party

3

may apply at any time to the presiding judge of the court in which the same is pending, by petition, for an order granting the party temporary alimony pending the issuance of a final judgment in the case"). Secondarily, he asserts that the award was excessive in that it did not take into account his ability to pay, given that the amount of total support – including alimony– exceeded his net monthly income.

Here, however, Castillo did not raise any claim regarding the appropriateness of the award of temporary alimony in the motion for new trial, and the trial court did not reach this issue in its order on the motion.[2] As a result, Castillo is precluded from raising such challenge for the first time on appeal. *McLendon v. McLendon*, 297 Ga. 779, 782-783 (5) ( 778 SE2d 213) (2015) (noting that appellant could not challenge on appeal issues not raised in written motion for new trial or hearing on the motion for new trial); *Brookfield Country Club v. St. James-Brookfield, LLC*, 287 Ga. 408, 413 (3) (696 SE2d 663) (2010) ("Issues which have not been ruled on by the trial court may not be raised on appeal.") (citation and punctuation omitted).

Castillo also challenges the sufficiency of the evidence supporting the alimony award. See *Ford v. Ford*, 349 Ga. App. 45, 47 (2) (a) (825 SE2d 449) (2019) (physical

---

[2] The parties waived an evidentiary hearing on the motion for new trial.

4

precedent only) (noting generally "issues which have not been ruled on by the trial court may not be raised on appeal" but then finding consideration of the issues raised on appeal proper when characterized as challenge to sufficiency of the evidence, which may be raised at any time) (citation and punctuation omitted) (citation and punctuation omitted). According to Castillo, despite finding that his gross income was $7,000 in both the child support order and final judgment, the trial court ordered him to pay cumulative support that was more than his net income. Citing *Coker v. Coker*, 286 Ga. 20, 22-23 (685 SE2d 70) (2009), Castillo contends that awarding alimony that is not supported by evidence reflecting the ability to pay is reversible error.

OCGA § 19-6-1 (c) authorizes alimony in accordance with the needs of the moving party and the ability of the other party to pay. "Among the numerous factors to be considered in determining the amount of alimony, if any, that is to be awarded are the financial resources of each party, including their separate estates, earning capacity, and their fixed liabilities. OCGA § 19-6-5 (a) (4) and (7)." (Footnote omitted.) *Duncan v. Duncan*, 262 Ga. 872, 873 (1) (426 SE2d 857) (1993). And, "[i]n the absence of any mathematical formula, fact-finders are given a wide latitude in fixing the amount of alimony . . . and to this end they are to use their experience as

5

enlightened persons in judging the amount necessary for support under the evidence as disclosed by the record and all the facts and circumstances of the case." (Citation and punctuation omitted.) *Farrish v. Farrish*, 279 Ga. 551, 552 (615 SE2d 510) (2005).

Here, although the trial court found that Castillo's reported monthly income was $7,000, the trial court was also authorized to consider other evidence reflecting additional sources of income. Testimony included, among other things, that Castillo reportedly received substantial rental income from multiple properties in Mexico, had transferred ownership of various properties into the names of his children and others, and, in addition to paying the mortgage on the primary residence, was able to pay $1,500 and $1,200 for his and his son's apartments, had paid cash for Lopez's 2019 vehicle, and had access to large amounts of cash. In the final divorce decree, the trial court recited that it had reviewed and considered, not only the financial documents tendered by the couple, but also "the testimony and argument pertaining to [Castillo's] income and the financials related to properties owned in Mexico."

"[T]his Court properly gives due deference to the opportunity of the trial court to judge the credibility of the witnesses." (Citation and punctuation omitted.) *Patel v. Patel*, 285 Ga. 391, 391 (1) (a) (677 SE2d 114) (2009). Based on our review of the

record, and given the wide latitude the trial court as fact-finder is given in fixing the amount of alimony, it cannot be said that the trial court abused its discretion in determining the amount of alimony awarded to Lopez.

2. Castillo challenges as error the trial court's analysis used in its equitable division of the couple's real property. One of the properties assessed in the division of real property was located in Mexico. The final divorce decree divided the Mexico property's $90,000 in equity equally between the couple, but after the court offset certain credit card debt attributed to Lopez, she was awarded $31,000 from the property. Castillo asserts that the trial court was required to use Mexico rather than Georgia law in calculating the division of the marital property located in Mexico. See *Mbatha v. Cutting*, 356 Ga. App. 743, 751 (2) (c) (848 SE2d 920) (2020) (holding that "the parties' interests in any real property should be determined under the law of the jurisdiction in which it is located while interests in personal property should be determined under the law of the owner's domicile at the time the property was acquired"). The result, according to Castillo, would have been that the property would have been "his or her 'separate' property pursuant to a designation of same made at the time of marriage on the marriage license."

Pretermitting whether the trial court was required to use the law of Georgia or of Mexico in its determination of the equitable division of the couple's real property, the record reflects that Castillo acquiesced to the trial court's ruling that it would use Georgia law in its assessment.

Here, at the conclusion of the trial, Castillo's counsel requested that the court clarify its decision regarding "the choice of law," and why it was using Georgia law to determine the equitable division of the real property. The court explained that Lopez had said she did not want any of the Mexico properties and the parties had stipulated to the one property being marital property, "[s]o I gave her half of that at the — the amount you quoted of equity." The trial court further explained that Castillo had received all of the Mexico real property, and that Castillo had

> acknowledged that [the property at issue] was marital property and if you want me to further acknowledge it, I'll use that one and use Mexican law because the Court has personal jurisdiction over both parties here as in person – personal real property and both parties stipulated and agreed that [the Mexico property] was marital property subject to equitable distribution[.]"

Castillo responded, "Thank you," and the judge conveyed that it had divided the real property in the manner Castillo had requested, but invited Castillo to "take[] it up,"

8

presumably indicating that Castillo could appeal his decision. Castillo then indicated, that "We're not planning to do that, judge."

> A party may not idly sit by and watch when possible error is presented and on appeal claim error. It is necessary, in order to make the same a basis for appellate review that opposing counsel make proper objection or invoke some ruling of the court. Consequently, in this case [Castillo's] failure to object and preserve the issue for appellate review deprives the appellants of the right to complain on appeal.

(Footnotes and punctuation omitted.) *Roberts v. First Ga. Community Bank*, 335 Ga. App. 228, 231 (1) (779 SE2d 113) (2015). See *Lamb v. Javed*, 303 Ga. App. 278, 280 (1) (692 SE2d 861) (2010) (noting that "a litigant cannot submit to a ruling or acquiesce in the holding, and then complain of the same on appeal. He must stand his ground. Acquiescence deprives him of the right to complain further.")(citation and punctuation omitted).

Given Castillo's acquiescence to the trial court's ruling, he cannot challenge same on appeal.

3. Castillo next contends that the trial court erred by awarding attorney's fees without identifying the factual or statutory basis for the award. Castillo asserts as inadequate a "mere summary statement" to support the $15,000 award of attorney

fees. The divorce decree simply stated that "[t]he Court hereby finds that [Lopez] is awarded attorney's fees in the amount of fifteen thousand dollars ($15,000.00)." It further directed the date and location that such attorney's fees should be remitted.

Under OCGA § 9-15-14 (a), a trial court shall award reasonable and necessary attorney fees where a party has asserted a position that lacked any justiciable issue of law or fact so that it could not reasonably be believed that a court would accept it. The court may award attorney fees under OCGA § 9-15-14 (b) if it finds that a party brought an action or raised a defense that lacked substantial justification, brought an action for delay or harassment, or unnecessarily expanded the proceedings by other improper conduct.

In addition, in divorce and alimony cases, a trial court may award attorney fees under OCGA § 19-6-2 (a) (1) after "consider[ing] the financial circumstances of both parties." In this regard, an OCGA § 19-6-2 award is not premised on a party's wrongdoing; rather, "it is to be made with the purpose of ensuring effective representation of both spouses in an action arising out of a divorce." *Cason v. Cason*, 281 Ga. 296, 300 (3) (637 SE2d 716) (2006). Findings of fact regarding the relative

10

financial circumstances of each party thus are prerequisites to an OCGA § 19-6-2 fee award. *Amoakuh v. Issaka*, 299 Ga. 132, 134 (3) (786 SE2d 678) (2016).

Similarly, when awarding fees under OCGA § 9-15-14, the court must limit the award "to those fees incurred because of the sanctionable conduct." (Citation and punctuation omitted.) *Brewer v. Paulk*, 296 Ga. App. 26, 31 (2) (673 SE2d 545) (2009). Thus, "'lump sum' or unapportioned attorney fees awards are not permitted in Georgia." Id. "[I]f a trial court fails to make findings of fact sufficient to support an award of attorney fees under either OCGA § 19-6-2 or § 9-15-14, the case must be remanded to the trial court for an explanation of the statutory basis for the award and any findings necessary to support it."(Citations and punctuation omitted.) *Thrasher-Starobin v. Starobin*, 299 Ga. 12, 13 (785 SE2d 302) (2016); see also *Trotman v. Velociteach Project Mgmt.*, 311 Ga. App. 208, 214 (6) (715 SE2d 449) (2011) (this Court will vacate and remand for further fact-finding where "the trial court's order, on its face[,] fails to show the complex decision making process necessarily involved in reaching a particular dollar figure and fails to articulate why" it awarded one amount of fees rather than another under OCGA § 9-15-14) (citation and punctuation omitted).

Here, the divorce decree identifies neither the statutory basis for the lump-sum fee award nor the facts underlying the award. While the trial court's findings as to the parties' relative income potentially could provide some support for an OCGA § 19-6-2 fee award, the decree here contains no indication that the fee award bore any relationship to those findings. Given these deficiencies, we vacate the trial court's award and remand for further proceedings consistent with this opinion. See *Amoakuh*, 299 Ga. at 134 (3); *Thrasher-Starobin*, 299 Ga. at 13.

*Judgment affirmed in part and vacated in part, and case remanded with direction. Gobeil and Pipkin, JJ., concur.*